```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF KENTUCKY
                   NORTHERN DIVISION
                     AT COVINGTON
```

CIVIL ACTION NO. 2007-203 (WOB)

CHARMAINE M. FOGLE, as
Administratix of the
of Wayne Fogle and William
Fogle, et al.                                         PLAINTIFFS

VS.                  MEMORANDUM OPINION AND ORDER

CSX TRANSPORTATION, ET AL                             DEFENDANTS


This matter is before the court on several motions that the court previously took under submission: defendant's motion to exclude testimony on alleged signal malfunctions (Doc. #41); defendant's motion to exclude A. David Nelson as an expert witness (Doc. #43); and defendant's motion to exclude Neil Gilreath as an expert witness on traffic control devices (Doc. #43). Having further reviewed these motions, applicable authority, and deposition testimony[1], the court finds that the motions should be granted in part and denied in part.

---

[1] In particular, the court reviewed the Nelson deposition, filed by defendant after the recent final pretrial conference. (Doc. #87)

*Analysis*

### A. <u>Applicable Standards</u>

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), the Supreme Court set forth the standard for admissibility of expert testimony. Federal Rule of Evidence 702 was subsequently amended to incorporate the dictates of these cases. The Court's "requirement that 'any and all scientific testimony or evidence admitted [be] not only relevant, but reliable,' 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' " *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 907 (6th Cir. 2004) (quoting *Daubert,* 509 U.S. at 589, 592-93)) (internal citation omitted).

"In short, under *Daubert* and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of" relevant issues. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citation omitted).

In *Kumho,* the Supreme Court reaffirmed *Daubert's* central

2

holding that a trial judge's "gatekeeper" function applies to *all* expert testimony, regardless of whether such testimony is based upon scientific, technical, or other specialized knowledge. *Kumho*, 526 U.S. at 147-49.

**B.** **A. David Nelson**

Mr. Nelson, one of the experts proffered by the plaintiffs, is a graduate electronics technician, who has extensive experience working on railroad crossings, and is a retired programs engineer for CSX. His vitae reflects no college or graduate degrees; however, he has extensive experience in dealing with railroad crossings. (Nelson Report at 1).

Having carefully evaluated Mr. Nelson's report, the court concludes that he is qualified by experience to testify as an expert on Sections 1-7 of his report, with exceptions noted herein. However, his testimony must be strictly limited thereto. He may not testify that failure to provide automatic crossing gates was negligence. On this point, the court incorporates its analysis below concerning Mr. Gilreath, plaintiff's second expert.

In Section 8 and beyond in his report, Mr. Nelson proffers various opinions on the meaning of federal regulations regarding actions required by the railroad as a follow up to certain alleged signal malfunctions at this crossing. The most recent

3

such malfunction was about 60 days before the accident.[2]

Mr. Nelson offers his interpretation of 49 CFR §§ 234.7-234.109, concerning actions he believes were required by the railroad due to the previous malfunctions, even though there is no evidence that the signals had malfunctioned between the incident of October 31, 2006 and the accident.

According to Mr. Nelson's interpretation, the railroad was required during this period to provide flag persons or police officers to direct traffic through the crossing indefinitely once the malfunctions had occurred.

Interpretation of these regulations is a matter of law for the court.  The court will permit the witness to testify to height of signal lights, etc, as noted above, because the meaning of those applicable regulations is apparent even to a layperson.

However, such is not the case with the regulations concerning signal malfunctions with which we are concerned. Indeed, Mr. Nelson's interpretation is directly contrary to the plain meaning of 49 CFR 234.103(b), which provides that "*until repair or correction of the warning system is completed,* the railroad shall provide alternative means of warning highway traffic ..." (emphasis added).

There is no evidence other than that the alleged prior

---

[2]The date of that reported incident was October 31, 2006.

malfunctions of the signals were caused by temporary conditions and that the malfunctions had been "corrected" or corrected themselves for a considerable time prior to the accident. Common sense dictates that the regulations did not intend to require flagging or police officers directing traffic for several months if the signals were again working properly. Therefore, Mr. Nelson's testimony concerning the meaning of these regulations will be excluded, as will any similar testimony from other witnesses.

Mr. Nelson also apparently intends to offer the opinion that because there were malfunctions in the signals previously, there "possibly" may have been a brief cessation of the flashing lights just as the plaintiff vehicle crossed the crossing. (Nelson Depo. at 45-47; 72-77). This opinion must be excluded because it is not based on any evidence that the conditions or trains at the time of the accident were similar to those at the time of the malfunctions, nor has Nelson done any testing or offered any facts to support such a hypothesis. Rather, the evidence is uncontradicted and overwhelming that the crossing lights were flashing immediately before and simultaneously with the collision. *Daubert, Kumho* and Rule 702 were expressly intended to exclude this kind of speculation.

In addition, the Sixth Circuit has held that "evidence of prior malfunctions of warning signals at a railroad crossing is

irrelevant so long as the signals functioned properly at the time of the accident." *Ayoub v. National Railroad Passenger Corp.*, 76 F.3d 794, 796 (6th Cir. 1996). Defendant is correct that all eyewitness testimony, including that of the independent third parties, is consistent that the signal lights at the crossing in this matter were flashing both before and after this accident. To allow the proffered testimony would thus circumvent the rule discussed in *Ayoub*. Moreover, because such testimony is based purely on Nelson's speculation, such testimony would be misleading, prejudicial, and likely to confuse the jury.

### D. Neil Gilreath

Defendant also moves to exclude the testimony of Neil Gilreath to the extent he is proffered as an expert on traffic control devices. Specifically, Mr. Gilreath proffers the opinion that automatic crossing gates were required at the Walton crossing.

Gilreath has fifteen years of experience as a former Covington, Kentucky police officer. He is now a licensed private investigator and performs some accident reconstruction. In this role, he received accident reconstruction training, including a "Railroad Grade Crossing Crash Investigation" class. During his tenure with Covington, he was the traffic unit supervisor, which included the responsibility for overseeing the overall traffic flow in the City of Covington. Gilreath admits, however, that he

did not have any responsibility for determining or having input into the appropriate selection of traffic control devices at highway grade crossing intersections.  Rather, he testified that he would refer questions about traffic control devices to the engineering department.  (Gilreath Depo. 13-16)

Thus, Gilreath has no training in railroad crossing design and no experience in determining the appropriate traffic signal devices to use at crossings.  Therefore, although experienced in accident reconstruction (and able to testify as to such), he is not qualified to be an expert on the necessity of gates at various crossing, including this one.  *See Jett v. CSC Transportation, Inc.*, No. 07-162, 2009 WL 899626, at *5 (E.D. Ky. March 31, 2009) (*citing Rice v. Cincinnati, New Orleans & Pacific Railway. Co.*, 920 F. Supp. 732, 736-37 (E.D. Ky. 1996)).  *See also Smelser v. Norfolk Southern Railway Co.*, 105 F.3d 299, 303-05 (6th Cir.), *abrogated on other grounds by General Elec. Co. v. Joiner*, 522 U.S. 136 (1997).

The hundreds of thousands of railroad crossings in this country which do not have automatic gates would no doubt be safer if they did.  Yet, the government has not required gates to be installed on all crossings, most probably because of the cost.  Mr. Gilreath offers the court and jury no cost analysis, either of initial installation or maintenance, nor any comparison of this crossing to other crossings, or how the complex decisions

7

regarding what crossings should have gates are arrived at.

Therefore, under Fed. R. Evid. 702, Mr. Gilreath's testimony on the requirement of gates must be excluded.  However, he may testify as to lines of sight, presence of brush on the right-of-way, etc.

Therefore, having reviewed this matter carefully, and being otherwise sufficiently advised,

**IT IS ORDERED** that defendant's motion to exclude testimony on alleged signal malfunctions (Doc. #41) and motions to exclude A. David Nelson and Neil Gilreath as an expert witnesses (Doc. #43, #44) be, and are hereby **GRANTED IN PART AND DENIED IN PART**, consistent with this memorandum opinion.

This 9th day of July, 2009.



**Signed By:**
*William O. Bertelsman* WOB
**United States District Judge**

8